**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 94-60678
Summary Calendar

---

SANABEL EL-ATTAR,

Plaintiff-Appellant,

VERSUS

MISSISSIPPI STATE UNIVERSITY, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Northern District of Mississippi
(1:91 CV 326 S D)

(September 1, 1995)

Before GARWOOD, WIENER, and PARKER, Circuit Judges.

PER CURIAM:[*]

## I. FACTS

Sanabel El-Attar ("El-Attar") is a naturalized citizen of the United States who was born in Egypt. She received a Bachelor of Commerce Degree from Ain Shams University in Cairo, Egypt, in

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion should not be published.

1959.  In 1973, she received a Master of Arts Degree in Sociology from the University of Georgia.  In 1980, El-Attar was accepted to the Master of Business Administration program at Mississippi State University ("MSU").  She received her degree in 1985.

From 1985 through 1991 El-Attar repeatedly applied for admission to the Doctor of Business Administration ("DBA") program at MSU.  She was not accepted into the program.  As a result of this continued rejection, El-Attar filed a civil rights action against MSU and others alleging she had been discriminated against because of her sex and national origin.  El-Attar made claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681, asserting that MSU's exclusive use of the Graduate Management Admission Test ("GMAT") in admissions had a disparate impact on women and individuals who spoke English as a second language.

Following a bench trial, the district court entered its memorandum order that El-Attar's suit be dismissed because she failed to establish that the defendants violated Title VI and Title IX.  The district court found that MSU did not use the GMAT as the sole determinative factor for admissions into the DBA program.  The district court also found that El-Attar had not presented any "persuasive statistical data" or "credible expert testimony" to show that MSU's admissions policy for the DBA program had a disparate impact on females or individuals who

2

spoke English as a second language.  El-Attar timely filed a

notice of appeal.  We affirm.

II.  DISCUSSION

A.  Finding that GMAT Score Was Not Sole Criterion for Admission:

El-Attar argues that the district court was clearly erroneous in its finding that MSU did not use the GMAT score alone to determine who would be admitted into the DBA program.[1]  This Court reviews factual findings under the "clearly erroneous" standard. Fed. R. Civ. P. 52; *Johnston v. Lucas*, 786 F.2d 1254, 1257 (5th Cir. 1986).  A district court's findings of fact are not clearly erroneous if they are "plausible in light of the record in its entirety."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

The testimony of several MSU faculty members who sat on the DBA admissions committee supports the finding that the GMAT score was not the sole admission criterion.  Dr. R.H. Gilmer, Director of Graduate Studies, testified that the GMAT was only one part of the application to the doctoral program.  The other parts included the applicant's statement of reasons for seeking admission, academic transcripts, and letters of reference.  Dr. Louis M. Capella, currently a professor of marketing and one-time Director of Graduate Studies, testified that the GMAT score was not the only criterion for admission.  Dr. Richard D. Koshel, dean of the graduate school, testified that in his experience at MSU the GMAT

_____

[1]El-Attar devotes a great deal of her appellate brief to the argument that it is improper to use the GMAT as the sole admission criterion.  As will be discussed below, the district court was not clearly erroneous in its finding that the GMAT was not the sole admission criterion.  As such, whether such a policy is proper is not relevant to the this case.

4

score was not a "go-no-go-decision." Dr. Jung P. Shim, a full professor of Management Information Systems, testified that admission to the MSU DBA program included consideration of GMAT scores, grade point averages, experience, and letters of recommendation. Dr. Mary Jones, an assistant professor of Management and Information Systems, testified that in reviewing applications for the DBA program she considers GMAT scores, grade point averages, letters of recommendation, work experience, and the applicant's written reasons for applying to the program. Dr. Rodney Andrews Pearson, an associate professor of Management and Information Systems at MSU, testified that reviewing an application consists of examining the entire application, including letters of recommendation, the applicant's narrative answers on the application form, the applicant's philosophies, the applicant's reasons for getting the degree, grade point averages, and GMAT score. Dr. Pearson testified that none of those items was absolutely determinative of whether an applicant was accepted. El-Attar testified that she knew of several other applicants who were admitted even though their GMAT score was below the recommended level.

Dr. Elias Richard Callahan, Jr., a former faculty member at MSU, testified in his deposition that the admission procedure for the DBA program was automatically halted if the applicant did not have an appropriate GMAT score. Dr. Callahan testified that he "had nothing to do with the admission process," and that Dr. Capella was in charge of the admissions process. El-Attar contends

that Dr. Callahan alone testified as to the admissions practices prior to 1989. This is incorrect. Dr. Capella was the Director of Graduate Studies from 1982-89. His testimony was specifically directed to the time when he was the director. He personally recalled El-Attar's 1985 application.

Given the consistent testimony of the faculty involved in the admissions process, it cannot be said that the district court was clearly erroneous in finding that the GMAT would not by itself stop an application, notwithstanding the testimony of Dr. Callahan. The district court was not clearly erroneous in its factual finding.

B.  <u>Disparate Impact Claim</u>:

El-Attar asserts that "MSU's sole reliance upon GMAT scores to cut-off acceptance to the DBA program disparately impacts female students" and "international students whose native language is not English." Thus, her disparate impact claim is dependent on a finding of sole reliance upon GMAT scores. As we have already held that the district court was not clearly erroneous in its finding that MSU did not solely rely on GMAT scores, the disparate impact claim fails as well.

6